State's Court of International Trade. We appreciate her coming to help us keep current with our docket. I'd like to advise appellants, if you have reserved any time for rebuttal or wish to reserve any time for rebuttal, I'd appreciate your letting me know at the beginning of your arguments. And the clerk may call the first case. 133898 Charles D. Hunt et al. versus City of Cleveland et al. City of Cleveland et al. Arguments not to exceed 15 minutes per side. Mr. DiCiello for appellants. Thank you. May it please the court, we would like to withhold five minutes. Okay, thank you. I come to you today representing a man who was involved in a car accident in October of 2008. And following the car accident, he was in a coma. And after the coma, he went through rehab. And while finishing rehab, he hired me. I'm afraid today, I have to admit my fear of not only coming before this honorable tribunal, because it's always scary, but I am concerned that the trial court's summary dispatching of my case for my client is powerful. Any time a retaliation case is brought, we plaintiffs have a terrible burden to find evidence of retaliation and to do so without that smoking gun, that admission of state of mind or intent. It's a difficult burden. It's a difficult job. These cases are difficult. In fact, Judge Boggs was involved in a case that made that observation, Florence. In that case, in that particular case and in cases that have since come before the United States Supreme Court, this has been a constant drumbeat. These are issues of difficulty. We don't want defendants being accused of crime and then blaming innocent police officers of wrongdoing, just because they, as I think the court in Hartman talked about and in Regal talked about, the United States Supreme Court, had the wrong bumper sticker on their car. We don't look to these cases simply to get out of crime. And this is a difficult thing for the bench and for the bar as well. In my case, my client's case, Charlie's case, Charlie was involved in a car accident and T-boned by an East Cleveland police officer. The case was investigated by the city of Cleveland. Because the accident actually was in Cleveland, correct? It was actually in the city of Cleveland. As a preliminary matter, we have to address whether we have statutory issues bringing the charges that we've alleged. The court made some observations with respect to the timing of this case being filed and what claims could or could not be tied to facts back in 2008 when the crash occurred. In a going forward way, as counsel for Charlie, there was no way we could have anticipated what we found out in 2009. For right before St. Patrick's Day, we filed this case in 2009. And following that, Charlie delivered a DUI citation in June. Before you filed the case, there was notice given to the city that you were going to file the case, correct? That's correct. And how did that come in the timeline between the time you filed your case and the case that was filed against your client? Thank you, Your Honor. We sent preservation orders out to the known investigators in the case. Again, it was a PI case. It was filed in Cuyahoga County as a state claim. There was no issue at that time of Section 1983 litigation being even present. We just issued protection and preservation orders to both the city of Cleveland and the city of East Cleveland to retain and preserve all the information gathered at the scene. We had no idea at that time that there was any criminal proceedings pending against Charlie beyond the investigation of the crash. And by the time we had sent those, that was in December of 2008, we had heard nothing. So we reasonably expected that we would hear nothing. Did those notices go to Mr. Kiggins? One was received by Kiggins, I believe, in December of 2008, yes. It was sent to the city of Cleveland Police Department at large, I believe. Who exactly do you think retaliated? Kiggins. It was Kiggins, okay. Have you dropped your suit against the city? Have we dropped our suit against the city? The city of Cleveland. The city of Cleveland. We haven't dropped our suit against the city of Cleveland, but I have to concede to all gathered that if we don't have a constitutional violation with Kiggins, we don't have anything against the city. Didn't the city of East Cleveland sue you or sue your client, or is that a mistake? Which city sued your client? There was a countersuit brought in the original filing in 2009. The city of East Cleveland did that, Your Honor. The suit that was brought six months or whatever after your client, well, okay, the countersuit was brought by East Cleveland? Correct. Yeah, that is, they answered and counterclaimed. And they cross-claimed Detective Kiggins. Right. Karraski is. That's not the retaliation you're claiming. No. Yeah. No. No, and this is the crux of it. I mean, here we were representing a man, and we were just about to start with our first CMC when he was delivered a DUI from October. Go ahead. Can you catalog for me exactly what the evidence is that shows retaliation by Mr. Kiggins? Because you're telling me that's the one who retaliated. Yes, Your Honor. Thank you. We are, of course, making an argument that was announced and referenced in Mohammed v. Close 379 F3 413. And in Mohammed, reading from that decision, temporal proximity alone may be significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive. We are pointing to the fact that Detective Kiggins closed his file in December. He closed his file for whatever reason. He did not open that file or get any new information with respect to that file until after Karrosha was sued and until Karrosha was sued also by his city and blamed by his city for this crash. And thereupon a DUI citation was issued to my client. When you say thereupon, though, I mean, in a sense the difficulty in making some sense of this is that there's a fair amount of time between the notice to Kiggins, which was in December, the actual filing of the suit, which was in March, and then Kiggins and the prosecutor do their thing in June. So it's not close proximity in that sense. Granted, it is after these other events. Now, I've tried to look at Kiggins' deposition because you would think that the crux here is why did you take this out of cold storage? But I didn't find very much. What would you point to, if anything, in Kiggins' deposition that gives you any purchase for saying that there was anything improper about going to his own city prosecutor, right? It's not the East Cleveland people where he'd be protecting Kuroskia. It's his own city prosecutor where this accident happened. So do you have anything from the deposition that I should focus on? Not in Kiggins' deposition, but in Cerny's deposition, I would direct the court. I can get the page. Cerny. C-E-R-N-Y. And who is that? He was Detective Kiggins' partner, worked with Detective Kiggins on that particular matter. I will note at page 75 to 76, Cerny is asked questions with respect to an interrogatory that was issued out to the city and to Detective Kiggins with respect to who ordered, who directed the investigation after the case was closed. And to this day, no one knows. But someone told Kiggins to do it. Kiggins didn't decide on his own. How do you know that? Because Cerny testified to it. I thought you were finished. What's the answer Cerny gives? He says, as it says right here, Question. All right, so going back to interrogatory number 11, apparently there was someone who had ordered him to bring DOI charges against Charles Hunt on June 10, 2009, and you have no knowledge as to who that was, right? No, I don't. The answer is I don't. Well, that's not saying that anybody did. That's a leading question, and it's not an answer that anybody did. I mean, we have the scrawled letter or document from the prosecutor, but that was after he had reviewed the file. Obviously, the crucial thing ought to be, why did Kiggins take the file out of storage? But I don't see that you ever asked Kiggins that. Kiggins actually says, he testifies to having no memory as to what he said to the prosecutor, why he went to the prosecutor, and specifically, he had no opinions at all in this case, which I thought was an important admission. Well, the email exchange back in December, he does say, I'd prefer to do this, but whatever you want is fine. So at least those emails don't give you any indication that he's on a witch hunt. Interestingly enough, Your Honor, he writes that email three days after he received our preservation order. His request as to what he wanted to see happen. And that is part of the timeline in this case that I'd be happy to direct the court to. Was that a request to the county or the city? That was to the county at that time. Okay, so that's to the county. Correct. Okay, and we know the county file gets closed. Correct. Okay. But I thought the retaliation you're claiming is when he goes to the city. Correct, but what I'm showing the court is that he's aware of the lawsuit, and within three days of being so aware, contacts the county prosecutor on felony charges. Interestingly enough, those same charges, DUI plus driving in a manner that causes serious physical harm, would be repeated in his pursuit of charges in the city court. In other words, he still needs the DUI. Just to be clear, the email exchange, which I'm looking at page ID 4690, starts with the email from the prosecutor to Kiggins. We'll be ready for pickup at 9 a.m. Are you planning on presenting on the intoxicated motorist? Do we know what triggered that? Because this is from the prosecutor as though the prosecutor is the first person. I mean, it may well be that Kiggins did something before this. Do we have anything in the record? I only have the facts as to the timing of the letter being received and the dialogue starting or happening. And I appreciate the court noting that. Because Kiggins is doing an investigation. Do we have any, like, a wrap-up on his investigation? Does he have an investigation report that he submits to anybody else? Not that he submits to anybody else. He does say, of course, in December 17th, the faithful words that we believe shows he had no basis to go further, and that was due to the aforementioned information received at the prosecutor's office. This case is hereby considered closed. Okay, counsel, you've used your time. Thank you. You'll have your five minutes for rebuttal. Thank you. Good afternoon to the panel, court staff, colleagues in the room, and everybody else. My name is John Baisweiss. If you meet me socially, please feel free to call me Jack. I'm representing the city of Cleveland and Officer Kiggins. This is my third time arguing before this court, and it is always an honor. I think the panel got to the heart of this, the key issue, this idea of retaliation by Officer Kiggins. What Officer Kiggins did was his job. He was investigating a crash. There was a person who was very intoxicated and had cocaine and marijuana in his system. As a police officer, he brought that to a prosecutor. Eventually, a city of Cleveland prosecutor made the determination to charge Mr. Hunt. There was probable cause. The prosecutor is not sued, and it was ultimately the prosecutor. I'm a little confused about this policy stemming from the lack of having a certified hospital, and the county prosecutor demanded that the report be from a certified hospital or a certified report. I don't understand what the city prosecutor's policy is, if it's the same or if it's different. Luckily, I can help you, Your Honor, because I also was confused by that when I first saw it. The first thing you need to understand is the county is, of course, a completely separate entity. In Cleveland, that's the way we work. The county prosecutors handle felonies, and the city handles misdemeanors and, I believe, some domestic violence stuff. They operate with the city codes and the city-codified ordinances, where, as opposed to the county, they use charges under the Ohio Revised Code and state law. The county, independent of anybody at the city, has a policy. I don't know if that policy goes to the current county prosecutor, the former, or how far back it goes, but it's their policy that they require some type of certification from a hospital for their blood results, if they're going to use that as evidence in a prosecution. That's not a legal requirement. That's their policy determination. Why they made it, I can't speak to it. I haven't the slightest clue. We don't have the same policy. There's no law that requires us to have such a policy. When it was brought to city prosecutors, I assume, because I can't speak for the prosecutor, but I assume they believed that the hospital's blood test was good enough for them. There was no reason for them to doubt that he had the blood alcohol level over the legal limit, that he had cocaine in the system, and that he had marijuana in the system. As a result, the prosecutor determined, hey, that looks like a crime to me. I think I'm going to do my job and initiate a prosecution. Is there any explanation of why the files weren't closed if there's still city prosecution possible? Your Honor, I can't really speak to that, other than to say it's really irrelevant. Until a crime's been solved or until a statute has run, the police can always continue to investigate. I can tell you we have an extremely busy department, and they do have to prioritize things. I don't know why there was a delay between going to the county prosecutor and going to the city prosecutor, but I can tell you that there's nothing in the record that would support that the reason was anything illegal, unlawful, or that would violate Mr. Hunt's rights. Obviously, it's not your place to make the other side's case, but in the deposition or in anything else, is there anything that discusses what happened with the file between December and June? No, but interestingly, I think that the fact that Officer Kiggins really didn't have a lot of direct knowledge speaks to his underlying motivation in this case, which is none other than doing his job. He investigates accidents. He does this all the time. This is day-to-day for him. So he found out two years later about an accident he investigated. Of course he doesn't remember. It was routine. He went out. He did his job. He went home. He had dinner. He went to sleep. He went out and did it the next day. That was it. There was nothing particularly memorable about this until years later a lawsuit was brought against Officer Kiggins personally. If the panel doesn't have any other questions for me, I'd cede the rest of my time to my co-counsel in East Cleveland, but I'm happy to continue. Thank you again. It was an honor. Good afternoon. My name is Keith Hansbro. I represent the appellees, City of East Cleveland, and the East Cleveland employees, Todd Karosha, Ralph Spotts, and Christopher Cargill. From the outset, appellees contend that it's important for the court to realize that there are two separate events being alleged in the amended complaint that was filed in 2011. We are dealing with a car accident that happened in October of 2008, and then a criminal prosecution by the City of Cleveland that occurred in June of 2009. You've already heard some oral arguments today. At no point has there been any argument, testimony, or citation to the record that anyone from East Cleveland or East Cleveland themselves had anything to do with any events that transpired after the crash that occurred in 2008. Judge Nugent's order granting summary judgment that was entered in June of 2013 spoke to three specific federal claims. There are two plaintiffs in this case, but the only federal claims belong to Mr. Hunt. There are no federal claims belonging to Ms. Conrad. The specific federal claims before the court are those of a First Amendment retaliation claim, a Fourth Amendment malicious prosecution claim, and a standard Monell claim. When you say that none of your people had anything to do after the crash, what about Mayor Brewer's conversation about or saying that there was a conversation with spots? And he says, I'm not going to help. I'm not going to do any of that crap. As I read it from Brewer's deposition, did I get that wrong? You did not, Your Honor. Mayor Brewer was the former mayor. That was addressed by Judge Nugent in his opinion where he discussed the fact that even taking into account a bare accusation made by Mr. Brewer, there was no evidence that a jury could possibly look to that there was any influence exerted by East Cleveland on the prosecutor. That is an event after the crash. That is, your defense to that part can't be purely the statute of limitations. I believe that is an event that is alleged by a former mayor. Okay, but am I right that you can't get rid of that part solely based on the statute of limitations? I would agree, but whether or not there's anything contained in the testimony of the former mayor, Mr. Brewer, that could fulfill any of the elements, I don't believe that exists. The city of East Cleveland, Qua City, never did anything other than defend itself, I guess, in the lawsuit. That is correct, Your Honor. No charges were brought by them. East Cleveland never brought any charges. None of the East Cleveland employees brought any charges. None of the East Cleveland employees or the city influenced or... The record makes some reference to Karaskia being fired but then reinstated. That is correct, Your Honor. Do we know why he was reinstated? I believe the record does not speak to that, Your Honor. Okay. It's difficult. As counsel for East Cleveland, I'm trying to get the point across that there's no evidence regarding any type of retaliation and that East Cleveland did not have anything to do with those events. No case is ever clean. The waters tend to get muddied. In this particular case, I'm having to deal with, at the time this happened, the former mayor was subsequently voted out of office and there was quite a scandal surrounding it and there were some bitter feelings. The former law director was unhappy after she left. There's a lot that was going on but... Okay. I get that feeling from the transcript. Mr. Brewer's deposition was quite heated but I would just like to point the court's attention to the fact that although he made statements such as, well, maybe this happened or maybe that, he never gave any facts. There's nothing a jury can look to. And Judge Nugent was very clear when he wrote about the fact that Mr. Brewer never discussed, for purposes of Monell, a custom practice or policy between two cities for trying to extinguish claims or go after people. It was just the former mayor making the statement of, well, I think the police try and cover stuff up and nothing more. That is nowhere near fulfilling the elements of a custom practice or policy that exhibits deliberate indifference leading to a constitutional violation. The record makes reference to there being a suit that was filed fairly timely and then that was voluntarily dismissed and then not filed again for about a year. Do you know anything about why that happened? Was that any interaction with the defendants? I'm sorry. As I understood it, they originally filed suit in March of 2009 and then voluntarily dismissed that suit in May of 2010 and then refiled in May of 2011, which is part of what leads to their statute of limitations problems. I just wondered whether that original dismissal, if there was anything indicating how or why that happened. I don't think there's anything substantial in the record aside for perhaps in the depositions of some of the East Cleveland employees discussing the financial state of East Cleveland. I simply put, there were no federal claims initially in that first complaint where we're dealing with a car accident against East Cleveland, which is the poorest city, I believe, in the state of Ohio. East Cleveland can't spend money unless the state auditor comes in and authorizes it. I think later federal claims were added, and the federal claims are stated mainly against the city of Cleveland, which has money to pay a judgment, which East Cleveland simply does not. But I can't speak to anything other than that, Your Honor. Okay. As I was saying, East Cleveland's involvement in these events does not extend beyond the crash date of 2008. We would ask that this court affirm the June 28, 2013 order entered by Judge Nugent dismissing the federal claims, both the First Amendment, the Fourth Amendment, and the Monell claims against all of the East Cleveland defendants. If there's no other questions, I have nothing further. Thank you, counsel. Thank you. DiCello, you have five minutes for rebuttal. You might weave into your argument two questions I have. One is this dismissal and refiling issue. Is there anything to that? The second is you cited the Mohammed case with regard to temporal proximity. Are you familiar with the Holtzheimer case from 2010, Holtzheimer v. Memphis, where this court spoke about temporal proximity? I have read that decision, Your Honor. I am not going to be able to quote chapter and verse of the court today on that. Okay. Go ahead. Well, with respect to the dismissal, we were fighting the DUI charge at that time. We had to stop the case because but for the allegation of Mr. Hunt being DUI, we would have had no civil case. I mean, we brought up car accidents. Well, correct me if I have the timeline wrong. My timeline says that all charges were dismissed against your client on April 22, 2010, and then you dismissed the original complaint on May 19, 2010. Is that erroneous? That is actually a mistake by the court. Okay. I think the dates just got 11 should be a 9, and I don't remember the exact sequence there. But what happened was we filed the lawsuit in 2009. We litigated for a brief period of time. The charges were brought, and the charges were dismissed. Yeah, but that's what I'm saying is that you didn't voluntarily dismiss your complaint until after the charges were dismissed. No, we had ñ well, we stayed. The case was stayed, Your Honor. Excuse me. I'm sorry. The case was stayed by operation of a stay that the trial court imposed. Since the case, the DUI ñ that's right. The DUI involves the exact same allegations as the civil case. Okay. Go on. I'd like to ask you a question. Why would the city of Cleveland retaliate against your client for filing a lawsuit against a city of East Cleveland police officer? Our firm belief on this, Your Honor, is that it was because they wanted to spoil the lawsuit against the city of East Cleveland's officer. They were helping each other. The city of Cleveland wanted to do that? Detective Kiggin specifically, yes. Doesn't that make your argument a little tougher? Yes. Yes, it does. It's two different jurisdictions. Yes, it does indeed. It makes it tougher. Counsel, I hate to depress you on this, but your brief at page 9 says on April 22, 2010, the prosecutor's office dismissed the charges against Mr. Hunt. The district court's opinion says on May 19, 2010, plaintiffs voluntarily dismissed their original complaint without prejudice. Is there something wrong with either of those? No. I misspoke, Your Honor. There was a stay in place. There was no activity on the civil case at all by operation of the stay, and we dismissed it immediately after we got our dismissal from the city court. We voluntarily dismissed, and we reexamined the case at that point. Okay. But there was no particular reason. I mean, now that you had the dismissal, you had at least the bones of your retaliation argument, right? We didn't do anything. They dismissed the case. We're innocent. They brought it. That's our harm. And kind of why you then waited a year, I was a little puzzled. That was all. If there's no good answer, go on to other law then. If there isn't some clever answer, just go on to the rest of your argument. There wasn't. Thank you, Your Honor. As far as the obligation under the Ohio Administrative Code for certified lab results, counsel for the city actually made a motion. The Ohio Administrative Code requires that before blood results be admitted in evidence in any court proceeding where those results would be used to establish alcohol content, they have to be through a certified lab. That statute's been on the books for some time now, and detectives certainly testified about it. When you said the Ohio Administrative Code, is that a statutory code or is that regulatory? Statutory code. Okay. So the state legislature has passed a law saying you can't admit things unless they're from a certified lab? Correct, Your Honor. Okay. And furthermore. Do you have a citation for that? I do not have the actual OAC number, but I can certainly bring that up. The fact is that Cerny testified about that too in his deposition where he talked about how it was that they were not allowed to use those papers to bring charges back in 2008 when Kiggins would have relied upon them in 2009 to do the same thing as a result of a policy that the city department had said to itself due to case law and litigation on that very issue. I don't know how that certified lab thing relates to the drugs in the system. Well, Your Honor, the would-be probable cause for this case would be that there was a reason to bring the DUI against Charlie Hunt because he had drugs and alcohol in his system. Counsel made that allegation earlier. The fact of the matter is that was a blood screen that was done at the surgical lab, as much as we can tell, and whether it was accurately done or the procedures by which it was done, we were completely at a loss to explain or have any information. That ordinance or administrative law you were talking about, that applies to alcohol tests that are used to establish the per se influence level, correct? Correct, Your Honor. For alcohol? Alcohol and drugs. The testing of blood, blood plasma, breath all has to be done through the lab or through facilities that have that technique. Anything else? Judges? Thank you, Counsel. Time's expired. Case will be submitted. Clerk may call the next case.